Filed 5/22/25  P. v. Hampton CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| THE PEOPLE, | B335278 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA157867) |
| v. | |
| DION LAMONT HAMPTON, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, Teresa P. Magno, Judge.  Affirmed.

Jean Matulis, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior

Assistant Attorney General, Kenneth C. Byrne, Supervising Deputy Attorney General, and Deepti Vaadyala, Deputy Attorney General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Dion Lamont Hampton (defendant) pleaded no contest to second degree robbery after the trial court denied his motion for mental health diversion (Pen. Code, § 1001.36).[1]  On appeal, defendant argues that the trial court's handling of his motion was procedurally defective.  We conclude there was no error, and affirm.

### FACTS AND PROCEDURAL BACKGROUND
### I.    The Underlying Crime

On July 14, 2022, defendant and Qunshone Harris approached Eric Brannon as he was walking through the parking lot toward the South Bay Pavilion Mall.  Defendant and Harris asked Brannon if he was affiliated with any street gang; Brannon said no.  After Brannon entered the mall, defendant and Harris again approached him and demanded that Brannon give them his belongings.  As Brannon turned to leave the mall, either defendant or Harris approached Brannon from behind, grabbed him by his shirt collar, and pushed him to the ground, in the process ripping Brannon's shirt and yanking off one of his necklaces.  When Brannon got back up, defendant threw the first punch.  A fistfight ensued, and Brannon ended up back on the ground.  Defendant and Harris searched Brannon's pockets, taking his wallet and iPhone; they also yanked off his remaining

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

two necklaces.  Defendant and Harris fled with Brannon's belongings.

## II.    Charges

The People charged defendant with second degree robbery (§ 211), and further alleged the aggravating circumstance that he "engaged in violent conduct in committing" the offense.[2]

## III.   Mental Health Diversion

### A.    *Mental health report*

In February 2023, the trial court granted defendant's request to appoint an expert to examine his mental health.

In March 2023, the expert—Dr. K. Drorit Gaines—filed a 23-page report that defendant's attorney acknowledged was "very thorough."  In preparing the report, Dr. Gaines performed a battery of tests on defendant, interviewed him for seven hours, and reviewed his medical records.  Dr. Gaines opined that defendant had borderline intellectual functioning, "[m]ajor neurocognitive disorder due to multiple etiologies" (due in part to brain injuries), and a language disorder.

With regard to mental disorders, Dr. Gaines opined that defendant suffered from (1) posttraumatic stress disorder (PTSD)-Complex, (2) reactive attachment disorder, and (3) cannabis use disorder.  Dr. Gaines explained that PTSD manifests, as pertinent here, as "[f]eeling[s] of detachment or estrangement from others," "[r]estricted range of affect," and "[h]ypervigilance and heightened physiological arousal"; Dr. Gaines also explained that reactive attachment disorder manifests in an inability to "know how to relate properly to others."

---

[2]    The People also charged Harris, and he also entered a plea.

With regard to whether these mental disorders played a significant factor in the charged robbery, Dr. Gaines opined:

"It is my opinion that [defendant]'s mental disorders were a significant factor in the commission of this charged offense. Neuropsychological examination provides evidence that [defendant] suffers from Axis I disorders, highlighted with borderline intellectual disabilities, major neurocognitive disorder, language disorder, and PTSD-Complex. Developmental disorders, such as borderline intellectual disabilities, and trauma-related disorders, such as PTSD-Complex, show consistent presence in [defendant]'s daily functioning. As such, [defendant] likely displayed symptoms consistent with these relevant mental disorders at or near the time of his offense."

When Dr. Gaines asked defendant about the charged offense, defendant stated, "I was kicked out [of my home]. I had no money. I had nothing to lose. I had nothing to eat and I got myself in that situation."

**B.** *Request for mental health diversion*

On July 18, 2023, defendant asked the trial court for a further continuance of the trial date to "file a formal mental health diversion motion" based on Dr. Gaines's report. When the court pointed out the length of time defendant's case had been pending and asked why a motion had not been filed earlier, defendant explained that the court had "asked [defense counsel] to make sure that [mental health] services are lined up before providing a mental health diversion motion." The court then asked defense counsel whether Dr. Gaines's report "address[ed] mental health diversion," including the two elements of eligibility

for such diversion—namely, whether defendant suffered from a mental illness and whether that illness was a "substantial factor in the commission of the crime." Defense counsel responded that Dr. Gaines had not been "ask[ed] . . . to do specifically mental health diversion," but explained that the report set forth a mental health diagnosis and "state[d] that mental disorder [was] a significant factor in the charged offense." The court "recommende[d]" that defendant submit Dr. Gaines's report so that the court could (1) consider the issue of defendant's eligibility for mental health diversion based on that report, the preliminary hearing transcript, and the probation report; and if defendant was found eligible, (2) next examine suitability, at which time defense counsel would be given an opportunity to line up mental health services. Defense counsel responded, "Okay." When the court sought to confirm defense counsel's assent by asking, "Are you fine with that?," counsel responded by verifying that the court had a copy of Dr. Gaines's report. The court invited the parties to submit "any other materials" they wanted the court to "consider" on the issue of eligibility for diversion, and set the matter for a further hearing a week later.

On July 25, 2023, the trial court issued its tentative ruling that (1) defendant "suffers from" three "eligible mental disorders"—namely, (a) PTSD-Complex, (b) reactive attachment disorder, and (c) cannabis use disorder; and (2) none of those disorders was "a significant factor in the commission of the robbery." With regard to the significant factor element, the court explained that neither reactive attachment disorder nor cannabis use disorder were significant factors in the robbery because the former manifests in an "[in]ability to form healthy relationships" and the latter "manifest[s] by physical reaction to the addiction

5

for cannabis." The court noted that PTSD-Complex manifests by "caus[ing] someone to be hypervigilant—and overreact—especially when something is triggered regarding the past traumatizing events," but found that the "preliminary hearing" testimony and defendant's own explanation of why he committed the robbery refuted any notion that defendant had been either hypervigilant or overreacted in response to any trigger because defendant and Harris had been "predatory" "aggressors" in an "old-fashioned robbery in which force [had been] used for financial gain." The court acknowledged that Dr. Gaines had come to a different opinion, but found that the opinion did not have "a very persuasive basis" given that it had seemingly been refuted by other evidence. Thus, the court found that the statutory "presumption" that a mental health disorder played a significant factor in a crime had been "overcome." In response, defense counsel argued that (1) Dr. Gaines's report did not "specifically" address "mental health diversion," and asked for additional time to have Dr. Gaines "prepare another report," and (2) the "trigger" for defendant's PTSD-Complex was "being kicked out of the home," such that anything he did thereafter was the result of "poor decisionmaking" and hence attributable to the mental disorder. The court denied defendant's request to have Dr. Gaines prepare a further report, noting that the report already contained "the facts" regarding a diagnosis and causation, such that a further report with additional "spin or analysis" by Dr. Gaines would not be helpful. The court denied defendant's motion.

### D.    *The plea*

On August 24, 2023, defendant entered a no-contest plea to the robbery count and admitted the aggravating circumstance.

The court placed defendant on formal probation for three years.

### E. *Appeal*

After the trial court issued a certificate of probable cause, defendant filed this timely appeal.

## DISCUSSION

Defendant argues that the trial court erred in denying his motion for mental health diversion because the court (1) wrongfully "refus[ed] to allow [him] to file a formal diversion motion" with a new report by Dr. Gaines with a "specific focus" on the requirements of the mental health diversion statute, and (2) applied the improper legal standard for assessing eligibility for mental health diversion. Typically, "[a] trial court's ruling on a motion for mental health diversion is reviewed for an abuse of discretion." (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1147.) However, defendant's first challenge turns on the meaning of the mental health diversion statute, and we interpret statutes de novo. (*People v. Tirado* (2022) 12 Cal.5th 688, 694.) Defendant's second challenge addresses the failure to apply the law correctly, which, if true, constitutes an abuse of discretion. (*Vaughn v. Superior Court* (2024) 105 Cal.App.5th 124, 135-136.) Defendant also alleges that both errors violate due process.

## I. Procedures for Instituting Mental Health Diversion

Section 1001.36 "authorizes pretrial diversion for defendants with qualifying mental disorders." (*People v. Braden* (2023) 14 Cal.5th 791, 799 (*Braden*).) Since January 1, 2023, a trial court tasked with deciding whether mental health diversion is appropriate under section 1001.36 must engage in a three-step analysis, first asking whether a defendant is *eligible* for pretrial diversion," and if so, whether they are "*suitable* for pretrial diversion," and if so, whether to nevertheless exercise the court's

"'residual' discretion" to deny pretrial diversion. (§ 1001.36, subds. (b) & (c); *Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 891-893.) A defendant is "eligible for pretrial diversion" if (1) "[t]he defendant has been diagnosed with a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders" (DSM), and (2) "[t]he defendant's mental disorder was a significant factor in the commission of the charged offense." (§ 1001.36, subds. (b)(1) & (b)(2).) The "significant factor" element employs a presumption: "If the defendant has been diagnosed with a mental disorder, the court shall find that the defendant's mental disorder was a significant factor in the commission of the offense unless there is clear and convincing evidence that it was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense." (*Id.*, § 1001.36, subd. (b)(2).)[3] A court may consider whether a defendant is eligible and suitable for pretrial diversion "[a]t any stage in the proceedings," and "[t]he hearing . . . shall be informal and may proceed on offers of proof, reliable hearsay, and argument of counsel." (§ 1001.36, subd. (e).)

Defendant argues that the trial court erred procedurally by (1) not allowing him to file a formal motion for mental health diversion and (2) not allowing him to submit a second report by Dr. Gaines specifically aimed at pretrial diversion. We reject this argument for two reasons.

First, defendant has waived—if not invited—any error regarding the procedures the trial court followed because he

---

**3** Section 1001.36 enumerates four factors bearing on suitability (*id.*, § 1001.36, subd. (c)), but we do not list them here because suitability is not at issue in this appeal.

agreed to them at the July 18, 2023 hearing. When the trial court "recommended" looking first at defendant's eligibility and relying upon Dr. Gaines's existing report to do so, defense counsel said, "Okay" and proceeded to locate a copy of that report.[4] (*People v. Reynolds* (2010) 181 Cal.App.4th 1402, 1408 ["[a] party forfeits his or her right to attack error by implicitly agreeing or acquiescing at trial to the procedure objected to on appeal"]; *People v. Wilson* (1965) 235 Cal.App.2d 266, 281 ["[c]oncurrence in the procedure followed by the trial judge implies a waiver of any objection, and consequently [a defendant] cannot complain for the first time on appeal"].) What is more, the trial court explicitly invited the parties to file additional materials—and defendant opted not to file anything further.

Second, defendant has not demonstrated that his lack of opportunity to file a formal motion or a supplemental expert report prejudiced him. He has not articulated what he would have said or done differently in a formal motion than he was able to convey with his oral, informal motion. He has also not articulated how a supplemental expert report would have affected the trial court's ruling, which found the absence of a nexus between defendant's mental health disorders and the charged offense based on the facts of the crime and defendant's own statements to Dr. Gaines about why he committed that

---

[4]     We accordingly reject defendant's assertion, made for the first time in his reply brief, that the trial court was railroading defendant into this procedure, such that any objection would have been futile.

crime. Nothing in a supplemental report could change those facts.[5]

## II. Use of Incorrect Standard

As noted above, one of the two eligibility requirements is that "[t]he defendant's mental disorder" be a "significant factor in the commission of the charged offense." (§ 1001.36, subd. (b)(2).) Also as noted above, the statute presumes this causal factor once a "defendant has been diagnosed with a mental disorder," but makes that presumption rebuttable upon "clear and convincing evidence that [the mental disorder] was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense." (*Ibid.*)

Defendant argues that the trial court did not employ the presumption because the court referred to the fact that defendant "ha[d] not established that the mental diagnosis was a significant factor in the commission of the charged offense," which defendant reads as placing the burden on him to prove this element and hence ignoring the statutory presumption. This argument misreads the record and misunderstands the law. As our Supreme Court has noted, section 1001.36 makes it "the *defendant's* burden to make a prima facie showing" of eligibility. (*Braden*, *supra*, 14 Cal.5th at p. 812, italics added; § 1001.36, subd. (e).) Thus, the trial court's reference to defendant not

---

[5] This is likely what the trial court was getting at by indicating that an additional report would be unhelpful because it would have contained, at best, new "spin or analysis" rather than new "facts." We therefore reject defendant's assertion that this reflects the trial court's prejudgment or bias. Defendant additionally asserts that the trial court demonstrated bias by not allowing defendant to argue the motion, but the transcript of the hearing contradicts that assertion.

"establish[ing]" the "substantial factor" element of eligibility is entirely proper.  Further, the trial court repeatedly acknowledged that it found the "presumption of the [mental disorder] diagnosis having caused the commission of the charged offense" had been "overcome."  Thus, defendant's argument that the court failed to apply the presumption is squarely refuted by the record. Defendant criticizes the trial court's verbiage in finding the presumption to be rebutted, asserting that the court did not parrot the language in section 1001.36 by finding that the evidence showed his mental disorders were "not a motivating factor, causal factor, or contributing factor" to the charged offense.  But such precision is not required.  (*People v. Mayfield* (1993) 5 Cal.4th 142, 196 [where "[t]he record . . . as a whole" indicates that the "court" "applied the proper concept," "isolated' "misstate[ments of or omissions from] the applicable standard" may be disregarded].)

\* \* \*

Because both of defendant's procedural challenges lack merit, his derivative due process challenge also lacks merit.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, P. J.
HOFFSTADT

11

We concur:

_____, J.
BAKER

_____, J.
MOOR